**INSURANCE SERVICES OFFICE,**
Appellee,

v.

**Byron KNUTSON, as North Dakota
Insurance Commissioner, Appellant.**

Civ. No. 9592.

Supreme Court of North Dakota.

Aug. 7, 1979.

Pearce, Anderson, Thames & Durick, Bismarck, for appellee; argued by Patrick W. Durick, Bismarck.

Alan J. Sheppard, Sp. Asst. Atty. Gen., Ins. Dept., Bismarck, for appellant.

SAND, Justice.

Insurance Services Office (ISO) filed a proposed rate revision with the North Dakota Insurance Commissioner. Following a decision by the commissioner denying the proposed revision, ISO appealed to the district court. The district court, in its order for judgment, directed the commissioner to approve the rate filing. Judgment was entered and the commissioner appealed. On appeal, the commissioner argued the district court exceeded its scope of review in the appeal from the commissioner's decision, and that the court erred in not permitting the commissioner to exercise his reasonable discretion in assigning weight to the statutorily enumerated factors used in consideration of a rate proposal. The commissioner also requested of this court leave to adduce additional evidence and to amend the findings of fact, conclusions of law, or decision.

A summary of the events leading to the appeal of this case is relevant, even though not all the facts are essential to our holding. ISO, an insurance rating organization, filed a proposed rate revision with the North Dakota Insurance Commissioner by letter dated 10 May 1977. The commissioner acknowledged receipt of the proposal and directed certain questions concerning the filing to ISO. ISO responded to the commissioner's questions and also submitted materials omitted from the original filing. In a subsequent letter the commissioner requested additional information which was later supplied by ISO. Then, by a letter dated 7 September 1977, the commissioner's office informed ISO that the rate revision had been disapproved.

Pursuant to § 26–28–18, NDCC, ISO made a written request of the commissioner for a hearing on its rate proposal. Hearings were held before a special hearing examiner on 28 October 1977 and 14 December 1977. On 23 March 1978, the hearing examiner issued findings and concluded that ISO met its burden of proof in support of its rate revision application and that the commissioner failed to rebut the proof of the applicant and, therefore, the commissioner's earlier disapproval should be reversed and the filing approved. The commissioner failed to issue an order within the 15-day statutory time period, whereupon ISO filed a petition with the district court seeking an alternative writ of mandamus. The district court granted the alternative writ of mandamus, ordering the commissioner to issue an order affirming, reversing or modifying the previous decision or to show cause why he had not issued such an order.

On 22 May 1978, over one year after the initial filing, the commissioner issued findings of fact and conclusions of law, as well as a decision and order denying ISO's rate revision.

ISO filed a notice of appeal, and later specifications of error, from the commis-

sioner's order with the district court. The district court issued a memorandum opinion on 28 November 1978. Eight days later judgment was filed reversing the order of the commissioner and remanding the matter to the commissioner for entry of an order approving the rate proposal. The commissioner appealed to this court. On 27 April 1979, six days before the oral arguments on this appeal were heard and nearly two years after the initial rate filing, the commissioner filed a motion with this court requesting the case be remanded to him with leave to adduce additional evidence and to amend the findings of fact, conclusions of law, or decision. This motion was heard at the same time the merits on the appeal were heard.

The commissioner set forth the following as issues on appeal in this case:

(1) Did the district court exceed its authority or scope of review?

(2) Did the district court err in not permitting the commissioner to exercise his reasonable discretion in assigning weight to the statutorily enumerated factors?

The district court, on appeal from a determination of an administrative agency, must affirm the decision of the agency unless it shall find any of the following:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of facts."

Section 28–32–19, NDCC.

In this case the commissioner argued that the district court exceeded its authority or scope of review.

The commissioner's findings of fact read, in part:

". . . the Commissioner finds the data base inadequate in that ISO has not supplemented the data base with the prior experience of companies recently becoming affiliated with ISO. Further, the Commissioner finds that ISO's company sampling, while statistically justifiable, may cause random fluctuations; therefore, all North Dakota experience should be reported, including supplementation upon a new affiliate's joining ISO."

In the commissioner's conclusions of law, it is stated:

"2. . . . the Commissioner concludes that the burden was on ISO to establish that existing rates were inadequate and not on the Commissioner to show excessive returns.

"3. The Commissioner concludes that ISO, by failure to include new affiliates' prior experience in the data base, by insistence on using a 'trending factor' during periods of major economic shifts, and by company sampling rather than raw total North Dakota experience, has also, therefore, failed to establish a prima facie showing of the need for a rate increase."

The district court, on the other hand, said in its memorandum opinion:

"His [commissioner's] second finding rejects the data base used by ISO in making its projections, and suggests that the inclusion of other statistical data would increase its reliability. There is absolutely no evidence in the record to support such a theory, nor were any questions asked from which this conclusion could be drawn. The Commissioner, if he feels there is a statistical inadequacy, had the right under § 26–28–04 to request specific information. The record indicates, in its present form, that had only North Dakota data been used, a greater increase would have been requested.

. . . . .

"In conclusion, the Commissioner fails to again conclude whether the filing is

excessive, inadequate or unfairly discriminatory. Instead he concludes that ISO has failed to establish a prima facie case for a rate increase. This court concludes that the record contains ample documentation which goes unchallenged and does establish a prima facie case on behalf of the applicant."

The commissioner's conclusions rejected the data supplied by ISO, stating that other data might be more relevant. The district court discarded this argument on the ground that the commissioner failed to show other information would be more reliable or would indicate the proposal was excessive.

This issue was largely decided in an earlier opinion of this court issued shortly before this case was argued to us. In *Allstate Insurance Co. v. Knutson*, 278 N.W.2d 383 (N.D.1979), the commissioner appealed from an order for judgment of the district court reversing the commissioner's decision denying Allstate's filing for insurance rate increases for private passenger and utility automobiles. We concluded that Allstate had made a prima facie showing that the rate increase was necessary notwithstanding that the commissioner's witnesses may have been correct in concluding that methodologies, other than the one used by the insurance company, were available to determine if Allstate used the best available one. In *Allstate* we said:

"Notwithstanding that this court has indicated its reluctance to substitute its own judgment for that of qualified experts in matters entrusted to administrative agencies [citations omitted] we believe that the Commissioner has a greater responsibility in considering applications of this kind than merely concluding that one or more techniques for determining future costs are more acceptable than the one employed by the applicant.

"Unless the technique employed by the applicant in determining the costs results in rates which are excessive, or inadequate, or unfairly discriminatory, contrary to § 26–28–03 subd. 1(d), or unless the Commissioner has established rules after appropriate notice and hearing, which rules appear to have been violated by the applicant in its filing, the filing should be approved." 278 N.W.2d at 389.

Later, in the same opinion, we adopted the approach suggested by the district court in that case. Under that approach, once the applicant makes a prima facie showing that a rate increase is necessary, the increase should be approved, unless

(1) it is *demonstrated specifically* that the evidence submitted is in some manner deficient and that the deficiencies are so extensive that the need for the relief requested has not been demonstrated, or

(2) that there is other equally credible evidence of record justifying some other conclusion, or

(3) that it is not possible to make a decision upon the evidence submitted because insufficient information was given.

Although under the first two alternatives the commissioner would be justified in denying the application, the appropriate procedure under the third is not to deny the application but to elicit or obtain the missing information and then complete the evaluation. *Allstate Insurance Co. v. Knutson, supra,* 278 N.W.2d at 392.

In this case, the district court concluded, and we agree, that the commissioner failed to establish credible evidence to justify a conclusion that the proposed rate increase was excessive. Nor did the commissioner specifically demonstrate the evidence submitted by the applicant was in some manner deficient. Reference made by the commissioner to additional information that may have made the evidence offered by the applicant more relevant is not sufficient to disapprove the application where such information was not requested by the commissioner nor a showing made that it would have justified a result denying the application. If the commissioner determined that a decision was not possible without the additional information, the information could have been elicited and the evaluation completed.

■ Reference was made at the hearing before the examiner as to the effect of a 1976 revision of the deductible program on ISO's participants. In his decision, the commissioner attached letters from ISO in 1975 which indicated the deductible program would result in a reduction in losses. These letters were not introduced as part of the record at the hearing. Section 28–32–06, NDCC, provides, in part:

"No information or evidence except such as shall have been offered and made a part of the official record of the hearing shall be considered by the administrative agency, except as otherwise provided in this chapter."

Although the information relied upon by the commissioner was in his possession at the time of hearing, § 28–32–07, NDCC, provides the manner in which an administrative agency may introduce into the record information in its possession which was not presented at the formal hearing. There is no indication the commissioner complied with the provisions of § 28–32–07, NDCC. We conclude, as did the district court, that the commissioner exceeded his authority in relying on the letters.

■ Under our Administrative Agencies Practice Act, the district court, on appeal from an administrative agency decision, must determine if the findings of the administrative agency are supported by a preponderance of the evidence. The district court made such a determination and concluded that the commissioner's findings were not supported by a preponderance of the evidence. We agree and accordingly determine that the district court did not exceed its authority or scope of review.

■ The commissioner argued the district court erred in not permitting the commissioner to exercise his reasonable discretion in assigning weight to the statutorily enumerated factors used in consideration of a rate proposal. Section 26–28–03(1)(a), NDCC, provides:

"Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings, or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both countrywide and those specially applicable to this state, and to all other relevant factors within and outside this state."

In his conclusions of law, the commissioner stated the Legislature left to his discretion what weight to assign to loss experience. On that basis, he rejected the use of "trending," a means of projecting future rate level requirements based upon past experiences. The district court stated this rejection of trending was error where the commissioner failed to introduce a substitute means of projecting future losses based upon past experiences. We addressed the identical issue in *Allstate, supra,* 278 N.W.2d at 391–392, where we quoted approvingly from *State ex rel. Commissioner of Insurance v. N. C. Fire Insurance,* 292 N.C. 471, 488–489, 234 S.E.2d 720, 729–730 (1977):

"The weight to be given the respective factors is for the Commissioner to determine in the exercise of his sound discretion and expertise, but he may not arrive at his determination as to the propriety of the filing by shutting his eyes to experience shown by evidence of reasonably probative value simply because it is not presented to him in the customary statistical form. . . ."

". . . the Commissioner may not act arbitrarily, rejecting as untrustworthy, for no stated or apparent reason, uncontradicted testimony or data submitted through competent and unimpeached witnesses."

In concluding the district court was correct in determining the commissioner erred in rejecting trending data, we rely on the conclusion we reached on this issue in *Allstate:*

"It is our view that the Commissioner cannot in the instant case, in the guise of weighing the factors, completely disregard what has been discussed throughout this opinion as trending, or in other

words, cannot completely disregard data which includes therein an estimation of prospective losses based upon past experience." 278 N.W.2d at 392.

The commissioner sought leave before this court to adduce additional evidence and to amend the findings of fact, conclusions of law, or decision pursuant to Rule 27, NDRAppP, and § 28–32–18, NDCC. In support of his motion, the commissioner stated he received on 2 August 1978 a document from the National Association of Insurance Commissioners entitled "North Dakota 1977, Market Share and Profitability, By Group and By Company." The commissioner argues such evidence was not available at the time of the 14 December 1977 hearing and, consequently, could not have been entered into the record at that time.

Section 28–32–18, NDCC, provides:

"If an application for leave to adduce additional evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing or proceeding had before the administrative agency, . . the court may order that such additional evidence be taken, heard, and considered . . . ."

Under the provisions of § 28–32–18, NDCC, before leave to adduce additional evidence will be granted, this court must find both that the additional evidence sought to be introduced is material, and that there were reasonable grounds for the failure to adduce such evidence at the administrative hearing.

The term "material," as it is used in § 28–32–18, NDCC, requires more than that the evidence relate in some manner to the particular controversy or question. Rather, the evidence should have a tendency to significantly support the position of the party advancing its admission. The commissioner, in this case, has failed to demonstrate how the evidence he seeks to admit would support a conclusion that the rate proposal was excessive. Counsel for the commissioner, in oral argument, actually admitted some information on the submitted document was damaging to the commissioner's position.

This rate revision has been subject to review and formal hearing before the commissioner. It has been appealed to both the district court and this court. Over two years have elapsed since the initial filing was made. It is not surprising that information now exists which is more current than the information used in the initial rate filing. Insurance rate regulation must, by necessity, involve projections into the future, some of which will not always prove to be accurate. The public interest, however, is not served by arbitrarily denying or delaying rate revisions until the test of time proves the accuracy of the projections. We can see little purpose in granting leave to adduce additional evidence with the result of virtually starting anew the entire review process for this case. Justice Vogel, on behalf of this court in *City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324, 331 (N.D.1975), quoted the following from other sources: "It is for the public interest and policy to make an end to litigation so that suits may not be immortal, while men are mortal. There should be at some point an end to litigation, Let this be it." The motion for leave to adduce additional evidence is denied.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., SAND and PAULSON, JJ., and ILVEDSON, District Judge, concur.

ILVEDSON, District Judge, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, concurring specially.

Recently Justice Stevens said in a concurring opinion that if the court was prepared to reexamine the area of law involved, he would vote to reverse. ". . . But my views are not now the law. The opinion

that The Chief Justice has written is faithful to the cases on which it relies. For that reason . . . I join his opinion." *Pinkus v. United States,* 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978).

Although I join in the results reached by Justice Sand because I see no alternative, my reluctance is like I expressed in my concurrence in *Allstate Ins. Co. v. Knutson,* 278 N.W.2d 383 (N.D.1979). The approximately 36% increase in premium which will now be authorized appears to me to be excessive—but my opinion is not controlling. The all-or-nothing requirement in Chapter 26–28, NDCC, almost assures un-

satisfactory results. I think that we have failed to limit our scope of review within the bounds set forth in the Administrative Agencies Practice Act (§§ 28–32–19 and 28–32–21, NDCC), and will find it necessary, in the future, to make some fine distinctions when asked to apply the same rule in other administrative agency appeals.